WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>     vs.<br><br>MICHAEL WAYNE WADE,<br><br>              Defendant. | Case No. 16-cr-00173-S-EJL<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

The United States of America, by and through Wendy J. Olson, United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, submits the following memorandum setting forth the Government's position at sentencing.  The Government recommends that the Court sentence the defendant to a term of imprisonment of 300 months, to be served concurrently to two state sentences the Defendant is currently serving.

## BACKGROUND

The Defendant entered into a pre-indictment plea agreement with the Government whereby he agreed to plead guilty to a one-count information charging Sex Trafficking of a

**GOVERNMENT'S SENTENCING MEMORANDUM - 1**

Minor, in violation of 18 U.S.C. § 1591.  He pled guilty at his initial appearance.  Sentencing is scheduled for January 10, 2017 at 11:00 a.m.

As part of the plea agreement, the parties stipulated to the guideline calculation.  The initial presentence report (PSR) calculated the guideline as 262-327 months (offense level 34, criminal history category VI).  As this calculation is consistent with the plea agreement, neither party has objected to the guideline calculation in the PSR.  The Government agreed to recommend a sentence within the guideline range, to run concurrently to terms of imprisonment the Defendant is currently serving at the Idaho Department of Corrections as a result of two Idaho state criminal convictions.  The Government's recommendation of 300 months, to be served concurrently to his Idaho state sentences, represents the mid-range of the guideline.

On December 22, 2016, the Defendant filed a number of objections to the PSR.  While these objections do not affect the guideline calculation, they do attempt to minimize the Defendant's conduct.  The Government requests the Court consider the entirety of the Defendant's offense conduct and relevant conduct.  To that end, this memorandum details the entirety of the Defendant's conduct, and includes facts provided in the investigative reports and discovery provided to the Defendant.  The attached exhibits consist of investigative reports, and phone calls and text messages between the Defendant, the minor victim (MV), and Jessica Kauffman.  While the plea agreement and PSR reference these calls and text messages, they do not include all of the content detailed herein.  If the Defendant objects to the court considering the exhibits, the Government is prepared to present testimony at sentencing detailing the foundation for this evidence.

**GOVERNMENT'S SENTENCING MEMORANDUM - 2**

## LEGAL ANALYSIS

The Ninth Circuit has set forth a basic framework which the district courts should follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts are to begin all sentencing proceedings by correctly determining the applicable sentencing guidelines range, precisely as they would have before *Booker*.

(2) Courts should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties. Courts may not presume that the guidelines range is reasonable. Nor should the guidelines factors be given more or less weight than any other. They are simply to be treated as one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

(3) If a court decides that a sentence outside the guidelines is warranted, then it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

(4) Courts must explain the selected sentence sufficiently to permit meaningful appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

## SENTENCING CALCULATION

### I.   Statutory Maximum and Minimum Sentence

A violation of 18 U.S.C. § 1591(a) carries a mandatory minimum sentence of 10 years, and a maximum sentence of life, a fine of up to $250,000, not less than five years and up to life supervised release, and a $100 special assessment.

### II.   United States Sentencing Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

#### A.   Offense Level Calculation

The total offense level is 34.

**GOVERNMENT'S SENTENCING MEMORANDUM - 3**

      B.      <u>Criminal History Calculation</u>

The Defendant's criminal history results in 20 points, resulting in a Category VI.

      C.      <u>Advisory Guideline Range</u>

The guideline range is 262-327 months.

## IMPOSITION OF SENTENCE

**I.**      <u>**Imposition of a Sentence under 18 U.S.C. § 3553**</u>

    A.    <u>18 U.S.C. § 3553(a) factors</u>

        1.      <u>The nature and circumstances of the offense</u>

Between November of 2013 and November of 2014, the Defendant recruited and enticed a fifteen-year-old child (MV) to engage in prostitution. He first met MV in November of 2013, one month after being released from prison after serving a five year sentence for failing to register as a sex offender. PSR ¶ 38. In a phone call that MV recorded, the Defendant began recruiting her to "hustle," (work as a prostitute), with him acting as her "daddy" (pimp). PSR ¶ 11. His pitch included:

- "I believe like me and you could f**king do something super big like, like cause you're a little lighter ass f**king bitch like and *you're young and like I can mold you* into f**king uh a goddess you know what I'm saying like *I see potential in you*, you know what I'm saying these other bitches is out here snoring instead of scoring like you're out here f**king getting it in, you're f**king and you're like, like you see what the f**k what life is and you know [UI] you know what I'm sayin."

- "…if you f**king with me and like okay *Domino is my daddy* and this and that, whatever f**k it, like it it's all in with me and you then it has to be only me and you like you've

**GOVERNMENT'S SENTENCING MEMORANDUM - 4**

got to keep your f**king eyes on the floor when we see other n***ers like you're young and s**t and you don't know like n***ers like die over bitches."

- "*I can mold you into f**king being a uh super super hustler* and like I was a super hustler in 08.  I'm just barely fresh off like I'm always on the move this and that f**king you'll be eighteen in a year f**king think I, *I got you young, you know what I mean like you'd be a f**king star by the time I'm done with you I guarantee you like*, like you've already got a leg up while all these bitches are sleeping in the game [UI] so I'm saying like I said like *you get these bitches out here f**king and sucking and f**king for free, truly f**king for free like you're already like all up on top of your s**t at sixteen* like so like keep doing what you're doing you know what I'm sayin like *try to hustle all day tomorrow* like I'm gonna see you tonight whatever but *try to hustle all day tomorrow…*"

- "*I have to mold you* into f**king like you, you got game Gucci from like whoever you were f**king with.  I'm not trying to clean up another n***ers mess but *you're still young and you're still moldable*; you're not set in your ways and that's what's good like I 'aint done with the street that's what I'm sayin and I don't f**k with a real a real lot of bitches but I can see you know what I can see you, that you, you, you're, *you have potential…*"

Exhibit 1 (emphasis added and expletives redacted).[1]

The Defendant's ability to immediately follow through on his recruitment of MV was interrupted by his arrest for another charge for failing to register as a sex offender in December of 2013.  PSR ¶ 39.  He was placed on probation for that offense in May of 2014, and his probation terms included not contacting minors or possessing an internet capable cell phone.

---

[1] Exhibit 1 is a transcript of a recorded phone call between the Defendant and MV in November of 2013, as referenced in the factual basis of the plea agreement and in paragraph 11 of the PSR.  The recording was discovered on a cell phone used by MV.

**GOVERNMENT'S SENTENCING MEMORANDUM - 5**

Despite these restrictions, the Defendant again began contacting MV via text message to recruit and entice her into engaging in prostitution.  PSR ¶ 6.  In July of 2014, the Defendant directed MV to send him pictures that he could include in an escort posting on backpage.com.  PSR ¶ 8.

During this time, the Defendant was also communicating with Jessica Kauffman, who was working as a prostitute.  He asked Kauffman if she was interested in a "double," or two girl prostitution call.  PSR ¶ 10.  After Kauffman refused, the Defendant directed Kauffman to post MV as an escort on backpage.com, and provided her with the pictures he received from MV.  PSR ¶ 10.  Kauffman posted MV as an escort on backpage.com on July 16, 2014.  The Defendant successfully brought MV and Kauffman together for the purpose of engaging in prostitution, despite knowing that MV was underage.  As the person who brought them together, he was entitled to "set the rules" and "make money" from them.  PSR ¶ 10.  His successful enterprise would not be fully realized at that time, however, as agents with the Idaho Department of Corrections arrested the Defendant for a probation violation the very next day.

The Defendant's incarceration did nothing to suppress his desires for MV to engage in prostitution with Kauffman.  While incarcerated, the Defendant continued to recruit and entice MV to engage in prostitution from his jail cell.  PSR ¶ 12.  He told MV that Kauffman could show her "the tricks of the trade" and how to "hustle."  He sold her on the idea that he, Kauffman, and MV were family, that MV had "mad potential," and that she could make money engaging in prostitution.  Exhibit 2.[2]  The Defendant also recruited Kauffman to assist MV in engaging in prostitution.  He directed Kauffman to take MV "under her wing" and ensure that MV was "working."  PSR ¶ 12.

---

[2] Exhibit 2 is a Boise Police Department report detailing recorded phone calls and text messages the Defendant made from the Ada County Jail Telmate system, as referenced in the plea agreement and in paragraph 12 of the PSR.  The text messages, phone calls, and transcripts of the phone calls were provided to the Defendant in discovery.

**GOVERNMENT'S SENTENCING MEMORANDUM - 6**

After the Defendant convinced MV to "hustle," the Defendant texted Kauffman, stating "k I just talked to [MV] she's all open I told her ur gonna play big sister and she ain't ta pay no body but us I told her if she stop look and listen we would let her be a part of our family." Exhibit 2. He later texted Kauffman "k so I talk two [MV] she's down to put work in for the team . . ." Exhibit 2, PSR ¶ 12. As a result, MV was once again posted on backpage.com in November of 2014, and she engaged in commercial sex acts on at least two occasions. PSR ¶ 7,8.

The Defendant's manipulation of MV included not only his recruitment and enticement of her to engage in prostitution, but also his persuading her to engage in other sexual activity. During the November 25, 2013 recorded phone call with MV, the Defendant twice requested MV send him a picture of her genitals. *See* Exhibit 3[3], PSR ¶ 11. Agents discovered several explicit images of MV on the same phone that contained the recorded phone call. *See* Exhibit 3. One image, taken one hour after the recorded phone call with the Defendant, depicted MV's naked breasts with the word "Domino$" written on her chest. Another image, taken on November 25, 2013 depicted MV's naked breasts with the word "Daddy-D" written on her chest. *See* Exhibit 3. Two other images depicted MV's torso and naked genitals with "Daddy-D" written on her lower abdomen. *See* Exhibit 3.

On July 12, the Defendant texted MV, stating that he wanted to have sex with her, and MV agreed that they could. *See* Exhibit 4[4] (messages 45-61, 94-95). On a second occasion that same day, the Defendant told MV he wanted to have sex with her, and then requested a picture of her genitals. *See* Exhibit 4 (messages 139-142). MV then sent an image of her genitals to the

---

[3] Exhibit 3 is a Boise Police Department report detailing evidence discovered on MV's cell phone.
[4] Exhibit 4 is a spreadsheet of text messages with MV from the Defendant's phone, as detailed in the factual basis of the plea agreement and in paragraph 6 of the PSR. Messages denoted as "sent" were sent by the Defendant, while those denoted as "read" were sent by MV.

**GOVERNMENT'S SENTENCING MEMORANDUM - 7**

Defendant. *See* PSR ¶ 6. The Defendant also had sex with MV on two occasions. Although the Defendant denies he had sex with MV, MV's statement that they had sex is corroborated by the Defendant's text messages and actions.

The Defendant took advantage of a fifteen-year-old child for his own financial and sexual purposes. He broke down her inhibitions by preying on her self-worth. He convinced her that she had the "potential" to be a "superstar" hustler if she allowed the Defendant to "mold" her. He directed her to take sexually explicit photos of herself and repeatedly told her he wanted to have sex with her. He did this despite his clear knowledge that MV was a child.

The Defendant's actions caused MV to trust him, to follow his directions, and to allow him to be her "daddy." Abusing this trust, the Defendant then connected MV with Jessica Kauffman, directed Kauffman to post MV as an escort on backpage.com, and continued to encourage MV to "work" and "hustle," or in other words, trade sex for money. As a result of the Defendant's efforts, MV engaged in commercial sex acts when she was sixteen years old.

2.   The history and characteristics of the defendant

The Defendant's criminal history reveals a violent individual with a history of harming others and refusing to obey the law. He is a sex offender as a result of a conviction for having sexual contact with a female under fourteen years old. He is a gang member with a history of violent assaults, including a conviction for aggravated assault where the victim eventually died. On two other occasions he was charged with aggravated battery, but the charges were dismissed because the victims refused to cooperate.

The Defendant has no respect for the law. He was convicted of failing to register as a sex offender on three occasions, and was charged with failing to register three other times. On two occasions he was convicted of providing false information to law enforcement. He has violated

**GOVERNMENT'S SENTENCING MEMORANDUM - 8**

probation or parole on three occasions, is subject to a probation violation warrant from 2006 in California, and was on probation in the State of Idaho when he committed the instant offense.

The instant conviction is the Defendant's seventh felony conviction in twelve years. His criminal history score of 20 is seven points above that necessary for a criminal history Category VI. The Defendant's criminal history reflects an individual whose entire adult life has consisted of committing crimes and serving time in prison.

The Defendant's history also reveals an individual who takes advantage of children for sexual purposes. This is his second criminal conviction involving sexual activity with a minor victim. Any individual who would take advantage of a child for sexual purposes is a significant danger to society.

> 3. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.</u>

The Defendant's conduct is undoubtedly serious and merits a significant punishment. The Defendant's acts of exploiting a child for commercial sex deserves a significant term of imprisonment. The Defendant's manipulation of the victim, persuading her to provide him with sexually explicit images, and engaging in sexual activity with her warrants stiff punishment.

The Defendant's history shows a complete lack of respect for the law, and the Government doubts that any sentence in this case will change the Defendant's view. However, the sentence should promote respect for the law to the general public given the seriousness of the Defendant's conduct and offense of conviction. A sentence of 300 months imprisonment reflects these sentencing goals. A sentence below the guideline range, as advocated by the Defendant, would not.

**GOVERNMENT'S SENTENCING MEMORANDUM - 9**

      4.      <u>The need for the sentence imposed to afford adequate deterrence and to protect the public.</u>

A 300 month sentence will provide specific deterrence to this Defendant, and protect the public from further criminal activity. His criminal history shows that lesser prison sentences have not deterred him from committing crimes. The nature of his manipulation of the victim shows a complete disregard for her safety and well-being. These acts, along with his history, reflects a person who will harm and take advantage of others for his own benefit. Put simply, the public must be protected from this Defendant.

General deterrence is also an important consideration in fashioning a sentence in this case. The sentence must send the message that individuals who seek to entice minors into sex trafficking will serve significant prison sentences. The Defendant's PSR objection argues that the Defendant "was never violent or abusive to Jessica Kauffman or MV." Defendant's Response to Presentence Report (Dkt. 17). However, "the presence or absence of violence does not always affect the strength of society's interest in deterring a particular crime or in punishing a particular criminal." *Rummel v. Estelle*, 445 U.S. 263, 275, 100 S.Ct. 1133, 1140, 63 L.Ed.2d 382 (1980)). Society has a strong interest in deterring individuals from sexually exploiting children and in punishing those who do. *United States v. Mozie,* 752 F.3d 1271, 1290-1291 (11th Cir. 2014).

      5.      <u>The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>

Any training, care, or treatment the Defendant needs can be provided by the Federal Bureau of Prisons. To date, sentences of probation, and the services provided in the Idaho Department of Corrections, have been unsuccessful in rehabilitating the Defendant. Thus, this factor should carry minimal weight in the Court's determination of a sentence.

**GOVERNMENT'S SENTENCING MEMORANDUM - 10**

      6.      The kinds of sentences available

In considering a sentence in this case, the Government requests the Court consider the impact of the pre-indictment plea agreement. In exchange for the Defendant's willingness to plead guilty to a violation of 18 U.S.C. § 1591(a), the Government agreed not to file additional charges. This agreement was of substantial benefit to the Defendant due to the penalties associated with the charges that the Government agreed not to file.

The evidence in this case supports at least two counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a). As detailed in paragraphs 6 and 11 of the PSR, the Defendant twice persuaded, induced, enticed, and coerced the minor victim in this case to engage in sexually explicit conduct for the purpose of producing a visual depiction, or attempted to do so. On both occasions, the minor victim sent the Defendant a sexually explicit photo. A violation of 18 U.S.C. § 2251(a) would carry a mandatory minimum 25-year sentence because the Defendant has a prior sex offense conviction. *See* 18 U.S.C. § 2251(e).

Additionally, the Defendant, as a person required to register as a sex offender when he committed the offenses against the victim, could have been subject to an enhanced penalty for registered sex offenders pursuant to 18 U.S.C. § 2260A. If charged, this enhancement would apply to any violation of 18 U.S.C. §§ 1591 or 2251. A conviction for a violation of section 2260A requires a mandatory 10-year sentence, to be served consecutively to any other sentence.

As a result of the Government's agreement not to charge the Defendant with violations of 18 U.S.C. §§ 2251(a) and 2260A, the Defendant avoided a mandatory minimum 35-year sentence. Instead, the plea agreement exposes the Defendant to a mandatory minimum 10-year sentence. The penalties associated with the Defendant's guilty plea (10 years to life imprisonment), and the guideline range (262-327 months), appropriately address the serious nature of his offense. However, the Court can and should consider all of the Defendant's

**GOVERNMENT'S SENTENCING MEMORANDUM - 11**

relevant conduct in this case, as well as the kinds of sentences that he could have faced for his conduct, in determining an appropriate sentence. The kinds of sentences available for the Defendant's conduct weighs heavily against a sentence below the guideline range.

7. <u>The established sentencing range</u>

The guideline range is 262 to 327 months.

8. <u>Any pertinent policy statements</u>

The Government has not identified any pertinent policy statements that would factor into the Court's determination of a sentence.

9. <u>The need to avoid unwarranted sentence disparities</u>

The Defendant provided the Government with notice that he intends to argue that a guideline sentence would present an unwarranted sentence disparity between himself and Jessica Kauffman. Ms. Kauffman participated in this offense and was charged in state court with violations of Idaho Code § 18-8602 (Human Trafficking – Underage Victim) and 18-5602 (Procurement of Prostitution). *See* Exhibit 5. She ultimately pled guilty to procurement of prostitution and was sentenced to 10 years imprisonment with two years fixed, given credit for 247 days served, and sentenced to a period of retained jurisdiction. After serving a 120-day rider, she was sentenced to 10 years of probation.

The Defendant's PSR response argues that Kauffman was "significantly involved in the facilitation of MV's prostitution," was "running things," and "initially approached [MV] about going on prostitution calls." Defendant's Response to Presentence Report (Dkt. 17). While it is true that Kauffman was involved in facilitating this offense, the evidence contradicts the Defendant's argument that she was more or equally culpable as the Defendant in recruiting MV to engage in prostitution.

**GOVERNMENT'S SENTENCING MEMORANDUM - 12**

Kauffman and MV first met in June of 2014 after the Defendant asked Kauffman if she was interested in a "two-girl" date with MV, which Kauffman refused. *See* PSR ¶ 10. In contrast, the Defendant met MV in November of 2013, eight months before Kauffman and MV met. The Defendant immediately began recruiting and enticing MV to engage in prostitution. *See* PSR ¶ 11. In the November 2013 recorded phone call with MV, the Defendant acknowledged she was "sixteen" (MV was actually fifteen years old at the time), then began his recruitment, detailing how he could help her "hustle," as detailed above. *See* Exhibit 1.

As the Defendant's November 2013 statements reflect, his recruitment of MV began well before he ever introduced MV and Kauffman to each other. After he introduced Kauffman and MV to each other, the Defendant directed Kauffman to post MV to backpage.com as an escort, and sent Kauffman pictures of MV to use in the posting. Kauffman posted MV as an escort on backpage.com in July of 2014. The next day, the Defendant was arrested for a probation violation.

Had Kauffman been "running things" in the recruitment and enticement of MV, her role would have been evident once the Defendant became incarcerated. Rather, after his arrest and incarceration, the Defendant continued to recruit and entice MV to participate in prostitution with Kauffman. Notably, it was only after the Defendant made his recruitment pitch to MV in several jail calls that he then informed Kauffman that MV was ready to work as a prostitute.

These statements clearly show that the Defendant recruited and enticed MV to engage in prostitution, and Kauffman went along with it. While Kauffman was certainly complicit in the sex trafficking of MV, the Defendant's culpability in recruiting and enticing MV to engage in prostitution far exceeds Kauffman's. Kauffman relied upon the Defendant as her "pimp," and took direction from him because the Defendant brought Kauffman and MV together, set the

**GOVERNMENT'S SENTENCING MEMORANDUM - 13**

rules, and made money from their acts of prostitution.  *See* PSR ¶ 10.  Put simply, the Defendant was in charge, and both Kauffman and MV followed his direction.  Taking into account the difference between the Defendant's role and culpability in this offense and Kauffman's, as well as the Defendant's significant criminal history and status as a sex offender, any sentencing disparity between he and Kauffman is justified.

          10.    <u>The need to provide restitution to any victims of the offense</u>

The victim in this case has not requested restitution from the Defendant.

      B.    <u>Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)</u>

The Government's within-guidelines recommendation is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing.  The guidelines, formerly mandatory, now serve as one factor among several that courts must consider in determining an appropriate sentence.  *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).  It remains, however, that "the Commission fills an important institutional role:  It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id.* at 108-09 (internal quotation marks omitted).  Thus, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'"  *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

The guidelines are the sole means available for assuring some measure of uniformity in sentencing, thereby fulfilling a key congressional goal in adopting the Sentencing Reform Act of 1984.  Reference to the guidelines, while carefully considering the 3553(a) factors, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in

**GOVERNMENT'S SENTENCING MEMORANDUM - 14**

judicial assignments. Therefore, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

The guidelines deserve significant respect. The Government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. A district court, however, must consider the guidelines range, *see* § 3553(a)(4), and is usually well-advised to follow the Sentencing Commission's advice in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Moreover, there are no other 3553(a) factors in this case which mitigate against imposition of a sentence within that range; to the contrary, the 3553(a) factors on balance support the imposition of the recommended guidelines sentence. Accordingly, the government recommends a within-guideline sentence of 300 months.

## CONCLUSION

Application of 18 U.S.C. § 3553 supports a sentence of 300 months, to run concurrently to the Defendant's state sentences, for the defendant's commission of the crime of Sex Trafficking of a Minor. The Government submits that a sentence of 300 months is sufficient, but not greater than necessary, to accomplish the goals of sentencing, and that a lesser sentence is not supported by application of the 18 U.S.C. § 3553(a) factors.

Respectfully submitted this 29th day of December, 2016.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:

*/s/ Justin D. Whatcott*
JUSTIN D. WHATCOTT
Assistant United States Attorney

**GOVERNMENT'S SENTENCING MEMORANDUM - 15**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 29, 2016, the foregoing **GOVERNMENT'S SENTENCING MEMORANDUM** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| THOMAS MONAGHAN<br>700 W. Idaho Street, Suite 1000<br>Boise, Idaho 83702<br>thomas_monaghan@fd.org | ☐ United States Mail, postage prepaid<br>☐ fax<br>☒ ECF filing<br>☐ email |

*/s/ Kate Curtis*
Legal Assistant

GOVERNMENT'S SENTENCING MEMORANDUM - 16